| | |
|---|---|
| IMPLUS FOOTCARE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. _____ |
| ) | |
| HICKORY BRANDS, INC. ) | |
| ) | |
| Defendant. ) | |

Plaintiff Implus Footcare, LLC ("Implus"), complaining of the actions of Defendant Hickory Brands, Inc. ("HBI"), alleges and says as follows:

## PARTIES

1. Implus is a limited liability company organized under the laws of the state of Delaware, with its principal place of business located in Durham, Durham County, North Carolina. For over two decades, Implus has been an innovative leader in the manufacture, distribution and sale of footwear accessories, including shoe insoles, shoe laces and shoe care products, socks, as well as air freshening and deodorizing products. Implus's products are distributed in over fifty thousand retail outlets across North America and in sixty-five countries worldwide.

2. Among the products that Implus manufactures and sells are its SNEAKER BALLS® line of shoe deodorizers. SNEAKER BALLS are small, spherically-shaped air fresheners designed to combat odors in a variety of locations, such as athletic shoes, gym bags and gym lockers, drawers, and other small areas where odors may occur.

3. HBI is upon information and belief a limited liability company organized under the laws of the State of North Carolina, having a principal place of business in Hickory, Catawba

County, North Carolina. HBI is in the business of, among other things, manufacturing and selling shoe laces, shoe polishes and cleaners, and shoe accessories. As a result, HBI is a direct competitor of Implus.

4. In addition to being a competitor, HBI has also been a customer of Implus. Specifically, between 2007 and 2011 HBI purchased over 200,000 pairs of Implus's SNEAKER BALLS shoe deodorizer products for resale to third parties, including the retailer New Balance.

5. This action arises from HBI's decision to stop purchasing genuine SNEAKER BALLS products from Implus for resale, and to instead manufacture and sell a copycat or "knockoff" imitation product under the confusingly similar name "Sneaker Bombs," all in violation of Implus's rights under federal and North Carolina state law.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this case arises under the provisions of the Lanham Act.

7. This Court has supplemental jurisdiction over the state and common law claims in this action pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the Lanham Act claims so as to form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims herein occurred within this district. HBI does business within North Carolina and within this District, both generally and as to the specific transactions giving rise to this action; the infringing products are being sold and offered for sale within this District; and HBI is subject to personal jurisdiction in this District based upon its transaction of business in this District with both Implus and the general consuming public.

2

## FACTS

9. Implus is the registered owner of a number of United States trademarks used in connection with the sale of SNEAKER BALLS, including the trademark SNEAKER BALLS (U.S. Reg. No. 1,540,059) and a design trademark for "A BAND ABOUT A SPHERICAL CONTAINER FOR AIR FRESHENER." (U.S. Reg. No. 1,583,278) (the "Design Mark") (collectively, the "Trademarks"). Proof of the registered status of the Trademarks is attached hereto as Exhibit 1.

10. The Trademarks have been in continuous use in connection with the sale of SNEAKER BALLS in commerce since 1988. The Design Mark and the SNEAKER BALLS trademark have been registered by the federal government since 1990 and 1989, respectively. By virtue of their extended and continued period of registration and use, the Trademarks have become "incontestable" under the law and the regulations established by the United States Patent and Trademark Office.

11. Implus acquired the rights to the Trademarks from their registered owner, the Dennis Green Design Group, Ltd., in 2007. *See* Exhibit 1. By virtue of this acquisition and assignment, Implus assumed all rights and privileges under the Trademarks, and continued to manufacture and sell SNEAKER BALLS under those marks worldwide.

12. SNEAKER BALLS are comprised of a hollow plastic sphere containing an air freshening agent. The exterior of SNEAKER BALLS products are decorated in a variety of colors and patterns, primarily consisting of spheres featuring a raised band about the equator of the sphere. Many of these products also feature a "Matrix" graphic pattern on the exterior of the product, in which elongated dots in red, blue, yellow, white or green are set against a black

3

background, with the equatorial band emphasized by the contrasting color. Photographs depicting SNEAKER BALLS products in this "Matrix" design are attached hereto as Exhibit 2.

13. Through 2011, SNEAKER BALLS products were sold in a clear plastic "clamshell" packaging with a pyramidal base, in which the two products are placed side-by-side beneath a rectangular insert card displaying the SNEAKER BALLS name above the product. *See* Exhibit 2.

14. In late 2011, Implus adopted a "card package" for SNEAKER BALLS, in which the two products are displayed side-by-side in clear plastic bubbles within printed cardboard stock beneath the SNEAKER BALLS mark  This new packaging retains crucial design elements from the previous packaging, specifically the prominent display of the SNEAKER BALLS products side-by-side in clear plastic packaging with a rectangular insert card displaying the SNEAKER BALLS name above the product. Photographs depicting a SNEAKER BALLS product in the current packaging are attached hereto as Exhibit 3.

15. Despite the recent switch to the card package format, thousands of SNEAKER BALLS products utilizing the clamshell packaging remain on the shelves of retail stores across the country to this day, as evidenced by the product pictured in Exhibit 2, which was purchased from a sporting goods store in Pennsylvania on March 20, 2012.

16. The visual image of the SNEAKER BALLS product and its associated graphics visible through clear plastic and their placement side-by-side in the associated packaging with a rectangular insert card displaying the SNEAKER BALLS name above the product constitutes the trade dress of the packaging in which these products have been and are now being sold (the "Trade Dress"). *See* Exhibits 2 and 3.

4

17. For over two decades, both Implus and the prior owners of the Trademarks expended a great deal of time, energy and money to advertise and promote the Trademarks and the Trade Dress in the United States and worldwide, to maintain and increase the goodwill and reputation for quality associated with that intellectual property.

18. Among other things, Implus and the prior owners of the Design Mark have created and distributed numerous print advertisements, collateral sales materials, and other marketing and promotional items in support of the SNEAKER BALLS Trademarks and Trade Dress.

19. Implus also maintains a Web site featuring the SNEAKER BALLS product and design at www.sneakerballs.com.

20. Since they were first offered for sale in 1988, SNEAKER BALLS have proven to be a consistently popular and successful product in the marketplace. During that time, Implus and the prior owners of the Design Mark have sold millions of units of SNEAKER BALLS worldwide, representing millions of dollars of sales in thousands of retail locations.

21. As a result of the unique and appealing design of the SNEAKER BALLS product and its associated Trademarks and Trade Dress, the quality of that product, and the great effort and expense that Implus and the prior owners of the Trademarks invested in advertising and promoting that design, the Trademarks and Trade Dress have become famous, and are associated in the minds of consumers with the SNEAKER BALLS product and the quality, source, sponsorship and approval of that product.

22. HBI is well aware of Implus's SNEAKER BALLS products and the valuable intellectual property and goodwill associated with those products. Between 2007 and 2011, HBI

5

purchased over 200,000 units of genuine SNEAKER BALLS from Implus, resold the units to third parties, including New Balance, who in turn offered the product for sale at retail locations.

23. Under the parties' business arrangement, Implus provided genuine SNEAKER BALLS products, designed the cardboard insert card specifically for New Balance and supplied the complete, fully-packaged product to HBI for resale. HBI then resold the packaged products to New Balance for sale in New Balance retail outlets under the SNEAKER BALLS mark.

24. The packaging that Implus designed for and provided to HBI, and which HBI used when reselling SNEAKER BALLS products to New Balance, clearly stated that both of the Trademarks were registered trademarks of Implus. A true and accurate depiction of this packaging and its declarations of Implus's trademark rights is attached hereto as Exhibit 4.

25. During the late summer and early fall of 2011, Implus and HBI were in the process of revising the cardboard insert to be used in the packaging of SNEAKER BALLS intended for resale to New Balance. Throughout that four-month process, HBI led Implus to believe that it intended to continue purchasing genuine Implus SNEAKER BALLS for resale to New Balance in the updated packaging. Among other communications, an e-mail dated October 5, 2011, from Julie Huffman of HBI to Implus stated that HBI "may be placing a new PO in the next week or so" for SNEAKER BALLS, and commenting that the new Implus artwork "looks very nice." A true and correct copy of Ms. Huffman's October 5, 2011 e-mail, along with the SNEAKER BALLS packaging artwork for New Balance as provided by Implus is attached hereto as Exhibit 5.

26. Ms. Huffman's October 5, 2011 e-mail was the last Implus heard from HBI regarding a new purchase order for genuine SNEAKER BALLS. No further orders were forthcoming.

6

27.     Instead, in early March 2012, Implus representatives discovered shoe deodorizing products on the shelves of New Balance retail outlets that were identical copies of authentic SNEAKER BALLS products, down to the replication of the "Matrix" graphic pattern on the exterior of the products, and which were being sold under the name "Sneaker Bombs." A true and accurate depiction of a "Sneaker Bombs" product and its associated packaging is attached hereto as Exhibit 6.

28.     The "Sneaker Bombs" product is also a hollow sphere with a band around the equator, and is the same size and has the same dimensions as SNEAKER BALLS. The red and black dot matrix pattern on the exterior of the product, and its contrasting red equatorial band, is an exact copy of the corresponding "Matrix" pattern used in genuine SNEAKER BALLS. *See* Exhibits 2 and 6.

29.     The packaging of the "Sneaker Bombs" product is also identical to the genuine SNEAKER BALLS Trade Dress in use through mid-2011, consisting of a snap-fitted plastic "clamshell" molded to accommodate the two spherical products placed side-by-side within a triangular base beneath a rectangular insert card displaying the "Sneaker Bombs" name above the product. Both the plastic clamshell and the insert card used in the "Sneaker Bombs" product are the same size and dimensions as the clamshell and insert card previously used in the SNEAKER BALLS packaging. *See id.*

30.     The current SNEAKER BALLS Trade Dress is also nearly identical in that the prominent display of the SNEAKER BALLS products placed side-by-side beneath a rectangular insert card bearing the SNEAKER BALLS name is the same as the "Sneaker Bombs" packaging layout. *See* Exhibits 3 and 5.

7

31.   In addition, both the SNEAKER BALLS and the "Sneaker Bombs" products have exactly the same recommended retail price of $4.99. *See* Exhibits 2 and 5.

32.   "Sneaker Bombs" products are being offered for sale in New Balance stores in precisely the same location as genuine SNEAKER BALLS products were previously sold. In some instances, the genuine and knockoff products are actually intermingled on the hang pegs used to hold and display the products, as a close inspection of Exhibit 5 reveals.

33.   Although "Sneaker Bombs" products and their associated trade dress are identical to SNEAKER BALLS and their associated Trademarks and Trade Dress, HBI's copycat products have no relation or affiliation to Implus or SNEAKER BALLS. Implus did not consent to HBI's use of the SNEAKER BALLS Trademarks or Trade Dress.

34.   Upon information and belief, New Balance has over 200 retail stores nationwide where "Sneaker Bombs" are offered for sale, including at least two stores within this District.

35.   Faced with the alarming discovery that HBI is selling a blatantly copycat SNEAKER BALLS product to a large and well-known customer for resale in hundreds of stores nationwide, Implus sent a cease and desist letter to HBI on March 9, 2012, reminding HBI of Implus's proprietary rights and demanding that HBI immediately cease selling and manufacturing its infringing product. A true and accurate copy of this March 9, 2012 letter is attached hereto as Exhibit 7.

36.   Implus's March 9, 2012 letter also requested that HBI take the following remedial action:

   a. Destroy all unsold inventory of Sneaker Bombs in your possession and any promotional materials depicting those products;

   b. Recall and destroy all Sneaker Bombs products sold to any customer, including but not limited to, New Balance, and provide certification of such destruction to Implus – or in the alternative pay Implus a royalty of $.50 for each such product sold;

8

c. Identify the factory or factories that produced these knockoff products for HBI; and

d. Agree in writing not to use the SNEAKER BALLS design or mark or any confusingly similar variation in relation to air fresheners in the future.

*See id.*

37. Implus provided HBI with one week – until March 15, 2012 – to respond to Implus's cease-and-desist demand. *See id.*

38. The March 15, 2012 deadline has passed without any substantive response from or action by HBI. Accordingly, Implus now brings this action to recover the damages it has suffered and continues to suffer as a result of HBI's infringing and unlawful sale of "Sneaker Bombs."

## COUNT I
### Trademark Infringement
(Violation of the Lanham Act 15 U.S.C. § 1125)

39. Implus incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

40. Implus is the owner by assignment of the Trademarks, consisting of valid, registered United States trademarks for the mark SNEAKER BALLS® (U.S. Reg. No. 1,540,059), as well as a design trademark, registered under Registration No. 1583278, for "a band about a spherical container for air freshener."

41. These registrations are *prima facie* evidence of the validity of the registrations, of Implus's ownership of the Trademarks, and of Implus's exclusive right to use the Trademarks in commerce, as provided in 15 U.S.C. § 1057(b) and 1115(a). Such registrations are further constructive notice of Implus's claim of ownership of the Trademarks under to 15 U.S.C. § 1072.

42. In addition to this record and *prima facie* proof of the ownership and strength of the Trademarks, those marks have in fact become famous and well-known throughout the United

9

States by virtue of their long, continuous, and successful use, both by Implus and the prior owners of the Trademarks, the large number of products incorporating those Trademarks that have been sold to the public, and the vigorous and continued efforts to promote those marks by both Implus and the prior owners of the Trademarks.

43. HBI was well aware of both the fame and value of the Trademarks and the goodwill associated with them, as well as Implus's exclusive rights to those Trademarks, by virtue of its extended course of dealings with Implus and its purchase and resale of hundreds of thousands of pairs of genuine SNEAKER BALLS products.

44. HBI has and continues to manufacture, distribute, sell and advertise "Sneaker Bombs," an air freshening product that is identical or virtually identical in design to SNEAKER BALLS and confusingly similar as to the mark under which it is sold.

45. HBI's "Sneaker Bombs" product is advertised, offered and sold for the same price and the same purpose and use as Implus's SNEAKER BALLS product -- that is, as an air freshener and deodorizer for shoes, gym bags and lockers, or any other small areas where odors may occur.

46. HBI's offer and sale of "Sneaker Bombs" has occurred and continues to occur in interstate commerce, and in precisely the same channels of distribution as Implus's SNEAKER BALLS products, including shoe stores and sporting goods stores.

47. HBI's sale of a product having an identical or virtually identical name, design, and appearance, that is described as having the same use and purpose, that is sold in the same channels of distribution, and that is offered for the identical retail price as SNEAKER BALLS constitutes a false designation of origin, and is likely to cause confusion, mistake or deception as

to the origin, sponsorship or approval of the goods among customers for and consumers of Implus's SNEAKER BALLS product.

48. HBI's unauthorized manufacture and sale of a confusingly similar product was neither innocent nor accidental. Through its multiple prior purchases and re-sales of authentic, authorized SNEAKER BALLS products, HBI was fully aware of the existence of the SNEAKER BALLS product and the Trademarks associated therewith. Upon information and belief, HBI's copying and infringement of the Design Mark and its selection of a confusingly similar trademark under which to sell "Sneaker Bombs" was and is a premeditated, willful, and malicious act, arising out of HBI's desire to profit from the fame of the SNEAKER BALLS Trademarks and the goodwill associated with those Marks without making proper payment to Implus.

49. As a direct, proximate, foreseeable, and indeed intended result of HBI's misconduct, Implus has suffered and will continue to suffer harm in the form of lost customers, sales and profits, and loss of control over and injury to its business reputation and to the goodwill associated with the Trademarks.

## COUNT II
### Trade Dress Infringement
(Violation of the Lanham Act 15 U.S.C. § 1114)

50. Implus incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

51. The Trade Dress associated with Implus's SNEAKER BALLS products, as described above, is primarily non-functional in that multiple design configurations and packaging exist and are in use for similar air freshener products.

52. The Trade Dress for the SNEAKER BALLS product, as described above, is inherently distinctive.

53. The Trade Dress for the SNEAKER BALLS product has also acquired secondary meaning through its continuous use in the marketplace for over twenty years.

54. HBI's sale of a product having an identical or virtually identical trade dress, that is sold in the same channels of distribution, and that is offered for the identical retail price as SNEAKER BALLS constitutes a false designation of origin, and is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of the goods among customers for and consumers of Implus's SNEAKER BALLS product.

55. HBI's unauthorized manufacture and sale of a confusingly similar product using a confusingly similar trade dress was neither innocent nor accidental. Through its multiple prior purchases and re-sales of authentic, authorized SNEAKER BALLS products, HBI was fully aware of the existence of the SNEAKER BALLS product and the trademark protection for the design of that product. Upon information and belief, HBI's copying and infringement of the Trade Dress was and is a premeditated, willful, and malicious act, arising out of HBI's desire to profit from the fame of the SNEAKER BALLS Trade Dress and the goodwill associated with that dress without making proper payment to Implus.

56. As a direct, proximate, foreseeable, and intended result of HBI's misconduct, Implus has suffered and will continue to suffer harm in the form of lost customers, sales and profits, and loss of control over and injury to its business reputation and to the goodwill associated with the Trade Dress.

12

Case 1:12-cv-00290 Document 1 Filed 03/23/12 Page 12 of 14

## COUNT III
## Unfair Competition
(Violation of N.C.G.S. § 75-1.1)

57. Implus incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

58. HBI's conduct as alleged herein was unfair and or deceptive.

59. HBI's conduct as alleged herein was in or affecting commerce.

60. HBU's conduct as alleged herein constitutes unfair competition and unfair or deceptive acts or practices in violation of N.C.G.S. § 75-1.1 *et seq.*

61. As a direct, proximate, foreseeable and indeed intended result of HBI's misconduct, Implus has suffered and will continue to suffer harm in the form of lost sales and profits, and the loss of control over and injury to its business reputation and the goodwill associated with its design trademark.

62. The damages caused by HBI's unfair competition and unfair or deceptive acts or practices should be trebled pursuant to N.C. Gen. Stat. 75-16.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Implus Footcare, LLC respectfully prays the Court:

a) For an award of judgment in its favor and against HBI on Implus's claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125 and/or N.C.G.S. § 75-1.1, together with compensatory, treble, and punitive damages and/or attorney fees as allowable by statute, with pre- and post-judgment interest thereon at the maximum legal rate, as may be found by the trier of fact or awarded in the Court's discretion;

b) That the costs of this action be taxed against HBI;

c) For a trial by jury on all issues so triable; and

d) For such other and further relief as the Court may deem just and proper.

13

This the 23rd day of March, 2012

/s/ A. Graham Shirley
Shirley & Adams, PLLC
115 West Martin Street
Raleigh, North Carolina 27601
Telephone: (919) 899-6378
Facsimile: (919) 899-6279
E-mail: grahamshirley@shirley-adams.com
N.C. State Bar No. 16052

and

/s/ Craig D. Mills
Craig D. Mills
PA State Bar No. 81331
Patrick T. Casey
PA State Bar No. 93985
Patrick D. Doran
PA State Bar No. 308781
Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19102
Tel: (215) 665-8700
Fax: (215) 665-8760
Specially Appearing Under LR 83.1(d)

*Counsel for Implus Footcare, LLC.*